Philip Gordon ISBN 1996
Bruce S. Bistline ISBN 1988
GORDON LAW OFFICES
623 West Hays Street
Boise, ID  83702
Telephone: (208) 345-7100
Facsimile: (208) 345-0050
E-mail: pgordon@gordonlawoffice.com

*[Proposed] Liaison Counsel for Lead Plaintiffs*

MOTLEY RICE LLC
James M. Hughes
William S. Norton
David P. Abel
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9440
E-mail: jhughes@motleyrice.com
E-mail: bnorton@motleyrice.com
E-mail: dable@motleyrice.com

*[Proposed] Lead Counsel for Lead Plaintiffs*
*Additional Counsel listed on Signature Page*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRICKLAYERS OF WESTERN PENNSYLVANIA PENSION PLAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HECLA MINING COMPANY, PHILLIP S. BAKER, JR. and JAMES A. SABALA,<br><br>Defendants. | Case No. 1:12-cv-00042-BLW<br><br>CLASS ACTION<br><br>**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF INSTITUTIONAL INVESTORS FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL** |

(caption continued on following page)

Memorandum of Law in Support of Motion of
the Institutional Investors for Consolidation,
Appointment as Lead Plaintiff, and Approval
of Selection of Counsel

1

| | |
|---|---|
| JOSEPH S. VITA 2001 REVOCABLE TRUST and JOSEPH S. VITA IRA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>HECLA MINING COMPANY, PHILLIP S. BAKER, JR. and JAMES A. SABALA,<br><br>Defendants. | Case No. 2:12-cv-00067-EJL<br><br>CLASS ACTION |

The Institutional Investors, comprising LRI Invest S.A. ("LRI") and City of Atlanta General Employees' Pension Fund ("Atlanta GEPF"), respectfully submit this Memorandum of Points and Authorities in support of their Motion, pursuant to § 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an order: (1) consolidating the above-caption related actions; (2) appointing the Institutional Investors as Lead Plaintiff for a proposed Class consisting of all investors who purchased the common stock of Hecla Mining Company ("Hecla" or the "Company"), during the period from October 26, 2010, through January 11, 2012, inclusive (the "Class Period"); and (3) approving the Institutional Investors' selection of Motley Rice LLP ("Motley Rice") as Lead Counsel and Gordon Law Offices as Liaison Counsel on behalf of the proposed Class.

Memorandum of Law in Support of Motion of the Institutional Investors for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Counsel

2

## INTRODUCTION

Pending before the Court are at least two related securities fraud class action lawsuits (the "Related Actions")[1] filed against Hecla, an Idaho-based mining company, and Individual Defendants Phillips S. Baker, Jr. and James A. Sabala. The Institutional Investors submit that, pursuant to the Exchange Act, as amended by the PSLRA, they should be appointed Lead Plaintiff on behalf of the putative Class. The Institutional Investors are two large and sophisticated institutional investors with ample resources and the capability to oversee complex litigation. Further, the Institutional Investors have a significant financial stake in the pending litigation, having suffered losses of $1,303,554.

In light of its significant losses, the Institutional Investors have a large financial interest in prosecuting this case—an interest believed to be greater than that of any competing movant. The Institutional Investors also meet the typicality and adequacy requirements set out in Rule 23 of the Federal Rules of Civil Procedure, because their claims are typical of those of absent Class members and they will fairly and adequately represent the interests of the proposed Class. Like the other members of the putative Class, the Institutional Investors seek recovery of losses incurred as a result of declines in the share price of Hecla stock purchased on the New York Stock Exchange (the "NYSE") in the United States. *See Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869, 2886 (June 24, 2010) (holding that § 10(b) applies to securities registered on a U.S. stock exchange, irrespective of the nationality of the shareholder).

In a case of this type, it is essential that any lead plaintiff applicant be large and sophisticated enough to play a meaningful role in managing complex litigation. Here, the

---

[1] The Related Actions are *Bricklayers of Western Pennsylvania Pension Plan v. Hecla Mining Co.*, No. 1:12-cv-00042-BLW (D. Idaho filed Feb. 1, 2012) and *Joseph S. Vita 2001 Revocable Trust v. Hecla Mining Co.*, No. 2:12-cv-00067-ELJ (D. Idaho filed Feb. 14, 2012).

Memorandum of Law in Support of Motion of
the Institutional Investors for Consolidation,
Appointment as Lead Plaintiff, and Approval
of Selection of Counsel

3

Institutional Investors are the type of investors whose participation in securities class actions the PSLRA was meant to foster. *See* H.R. Conf. Rep. No. 104-369 at 34 (1995), *reprinted in* 1995 U.S.C.A.A.N. 730, 733; S. Rep. No. 104-98 at 6 (1995), *reprinted in* 1995 U.S.C.A.A.N. 679, 685. The Institutional Investors have the requisite qualifications to prosecute securities class actions on behalf of injured investors. *See* Certifications, Ex. A to the Decl. of Philip Gordon in support of this Memorandum ("Gordon Decl.").

Finally, the Court should approve the Institutional Investors' selection of Motley Rice as Lead Counsel and Gordon Law Offices as Liaison Counsel on behalf of the proposed Class. The claims of the proposed Class will be protected by Motley Rice and Gordon Law Offices, which have the expertise and resources necessary to handle litigation of this scale.

## FACTUAL BACKGROUND

Hecla is engaged in discovering and producing silver, gold, lead and zinc. The Related Actions allege that Hecla failed to disclose serious operational problems at its Lucky Friday mine, which ultimately caused the death of a miner, fines, and a substantial reduction in its silver production.

Hecla is organized into two segments: the Greens Creek and Lucky Friday mines. The Company's Lucky Friday mine is one of the United States' deepest underground silver producing mines. Two minors were killed in separate incidents in the Lucky Friday mine in April 2011 and November 2011. The deaths were followed by a third incident in December 2011, when seven miners were injured by a rock burst in the Lucky Friday mine. As a result, Hecla suspended operations, announcing that mining operations at the mine would resume in February 2012. Following the incidents, the United States Mine Safety and Health Administration conducted an investigation into the Lucky Friday mine, accused Hecla of safety

Memorandum of Law in Support of Motion of
the Institutional Investors for Consolidation,
Appointment as Lead Plaintiff, and Approval
of Selection of Counsel

4

failures that led to one of the miner's deaths, and fined the Company nearly $1 million. Thereafter, on January 5, 2012, the federal inspectors closed the Lucky Friday mine.

On January 11, 2012, Hecla announced that the Lucky Friday mine would be closed for up to a year based upon the federal inspectors' order. The Company was required to engage in an extensive clean-up of the mine in order to meet safety regulations. As a result of this closure, Hecla reduced its estimated silver production for 2012 by over 20%. On this news, Hecla stock dropped $1.23 per share, to close at $4.61 per share, a one-day decline of 21%.

## ARGUMENT

### A.     The Related Actions Should be Consolidated

Consolidation pursuant to Rule 42(a) is proper when actions involve common questions of law and fact. *See Idaho Wool Growers Ass'n v. Schafer*, No. CV-08-394-S-BLW, 2009 WL 73738, at *1 (D. Idaho Jan. 8, 2009). This Court has broad discretion under Rule 42 to consolidate cases pending in this district. *See Investors Research Co. v. U.S. Dist. Ct.*, 877 F.2d 777 (9th Cir. 1989); *Perez-Funez v. Dist. Dir., Immigration & Naturalization Serv.*, 611 F. Supp. 990, 994 (C.D. Cal. 1984) ("A Court has broad discretion in deciding whether or not to grant a motion for consolidation, although, typically, consolidation is favored.") (citations omitted).

Courts have recognized that class action shareholder suits, in particular, are ideally suited for consolidation pursuant to Rule 42(a) because consolidation of many actions involving the same parties and issues expedites pretrial and discovery proceedings, reduces duplication, and minimizes the costs and time expended by all persons involved. *See In re Equity Funding Corp. of Am.*, 416 F. Supp. 161, 176 (C.D. Cal. 1976). Section 21D(a)(3)(B) of the Exchange Act contemplates the consolidation of multiple actions "asserting substantially the same claim or claims." *See* 15 U.S.C. § 78u-4(a)(3)(B). Moreover, "[n]either Rule 42 nor the PSLRA

Memorandum of Law in Support of Motion of
the Institutional Investors for Consolidation,
Appointment as Lead Plaintiff, and Approval
of Selection of Counsel

5

demands that the actions be identical before they may be consolidated." *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1133 (C.D. Cal. 1999) (consolidating six actions with substantial overlap in defendants and different class periods).

Both of the Related Actions assert essentially the same class claims brought on behalf of purchasers of Hecla common stock who purchased in reliance on Defendants' materially false and misleading statements and/or omissions during the Class Period. Consolidation is appropriate when, as here, there are actions involving common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *Takeda*, 67 F. Supp. 2d at 1133.

The Institutional Investors respectfully submit that the requirements for consolidation are met here and that the Related Actions should be consolidated.

### B. The Institutional Investors Should Be Appointed Lead Plaintiff

The Institutional Investors meet every prerequisite for appointment as Lead Plaintiff in this action. The PSLRA provides a straightforward procedure for selecting lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1); *see also* 15 U.S.C. § 78u-4(a)(3)(B) (setting forth procedure for selecting lead plaintiff); *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) (same). Section 21D(a)(3)(A)(i) of the PSLRA provides that within 20 days after the date on which a class action is filed, the plaintiff shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class:

> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and

Memorandum of Law in Support of Motion of
the Institutional Investors for Consolidation,
Appointment as Lead Plaintiff, and Approval
of Selection of Counsel

6

>  (II)   that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Under the PSLRA, a court is to consider any motion made by class members and appoint the movant that the court determines to be most capable of adequately representing the interests of the class as lead plaintiff.  Specifically, the PSLRA provides that a court:

> shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (. . . the "most adequate plaintiff") . . . .

15 U.S.C. § 78u-4(a)(3)(B)(i).

In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person or group of persons who: (1) filed a complaint or made a motion to serve as lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) who otherwise satisfies the requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Cavanaugh*, 306 F.3d at 729-30.

Under the sequential procedure set forth by the Ninth Circuit in *Cavanaugh*, this presumption may be rebutted only by proof that the presumptive most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Cavanaugh,* 306 F.3d at 741; *see also* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Here, the Institutional Investors meet each of these statutory prerequisites.

Memorandum of Law in Support of Motion of
the Institutional Investors for Consolidation,
Appointment as Lead Plaintiff, and Approval
of Selection of Counsel

7

### C. The Institutional Investors are the "Most Adequate Plaintiff"

The Institutional Investors respectfully submits that they are the presumptive "most adequate plaintiff" because they have complied with PSLRA procedural requirements, hold the largest financial interest of any known movant, and satisfy Rule 23's typicality and adequacy requirements.

#### 1. The Institutional Investors Have Satisfied the PSLRA's Procedural Requirements

The Institutional Investors have filed this motion to serve as lead plaintiff in a timely manner. On February 1, 2012, the plaintiff in the first filed action against Cooper published a notice of that action pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i). *See* Gordon Decl. Ex. B. The notice advised class members of the existence of the lawsuit and described the claims asserted therein. The notice also advised class members of their right to file a motion to be appointed as lead plaintiff within 60 days of the date of the notice, i.e., on or before April 2, 2012 (because the 60 day period falls on Sunday, April 1). The Institutional Investors have filed their motion within the time period prescribed by the PSLRA.

#### 2. The Institutional Investors Have the Largest Financial Interest in the Relief Sought by the Class

In selecting the presumptive lead plaintiff, "the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Niederklein v. PCS Edventures!.com, Inc.*, No. 1:10-cv-00479-EJL-CWD, 2011 WL 759553, at *4 (D. Idaho Feb. 24, 2011) (citing *Cavanaugh*, 306 F.3d at 529-30).

Memorandum of Law in Support of Motion of
the Institutional Investors for Consolidation,
Appointment as Lead Plaintiff, and Approval
of Selection of Counsel

8

During the Class Period, the Institutional Investors purchased 762,000 shares of Hecla common stock on the NYSE at artificially inflated prices, and suffered losses of $1,303,554.[2] *See* Gordon Decl. Exs. A, C (Certifications and Loss Chart, respectively). The Institutional Investors are not aware of any other movant with a larger financial interest in the outcome of this action. Consequently, and because they also satisfy Rule 23's typicality and adequacy requirements, the Institutional Investors are entitled to the legal presumption that they are the most adequate plaintiff.

### 3. The Institutional Investors Satisfy Rule 23's Typicality and Adequacy Requirements

In addition to the largest financial interest requirement, the PSLRA also directs that the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). With respect to the qualifications of a class representative, Rule 23(a) requires generally that its claims be typical of the claims of the class and that the representative will fairly and adequately protect the interests of the class. With respect to class certification, Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) such claims are typical of those of the class; and (4) the representative will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). However, at the lead plaintiff selection stage, the court need only "make an initial determination of whether the presumptively most adequate plaintiff has made a prima facie showing that he has satisfied Rule 23's typicality and adequacy requirements." *Niederklein*, 2011 WL 759553, at *9; *see also In re Atlas Mining Co. Sec. Litig.*, No. CV 07-428-N-EJL-MHW, 2008 WL 821756, at *6 (D. Idaho Mar. 25, 2008) ("The

---

[2] This figure is based on a first-in, first-out (FIFO) methodology. Under a last-in, first-out (LIFO) methodology, the Institutional Investors suffered losses of $1,195,643.

Memorandum of Law in Support of Motion of
the Institutional Investors for Consolidation,
Appointment as Lead Plaintiff, and Approval
of Selection of Counsel

9

requirements of 'typicality' and 'adequacy' of representation are the key factors in determining the appropriate lead plaintiff under the PSLRA.") (citing *Cavanaugh*, 306 F.3d at 730).

As detailed below, Universal satisfies the typicality and adequacy requirements of Rule 23(a), and is qualified to be appointed as lead plaintiff in this action.

### a. The Institutional Investors' Claims Are Typical of Those of the Class

The typicality requirement of Rule 23(a)(3) is satisfied when the "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Atlas Mining*, 2008 WL 821756, at *6 (quoting Fed. R. Civ. P. 23(a)(3)). "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Here, the legal and factual bases for the claims of the Institutional Investors are typical of the claims of the members of the class, in that the Institutional Investors and other class members must show:

(a) whether Defendants' actions violated the federal securities laws;

(b) whether Defendants caused Hecla to issue false and misleading statements;

(c) whether Defendants' conduct caused the market price of Hecla common stock to be artificially inflated during the Class Period and thereby caused the losses suffered by class members; and

(d) whether the members of the class have sustained damages and, if so, what is the proper measure of damages.

Memorandum of Law in Support of Motion of
the Institutional Investors for Consolidation,
Appointment as Lead Plaintiff, and Approval
of Selection of Counsel

10

Because there are well-defined common questions of law and fact involved in this case, the claims asserted by the Institutional Investors, who are not subject to any unique defenses, are typical of the claims of the members of the proposed class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998) ("Under [Rule 23's] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."). These shared claims, which are based on the same legal theories and arise from the same events and course of conduct as the Class' claims, satisfy Rule 23(a)(3)'s typicality requirement. *See Atlas Mining*, 2008 WL 821756, at *6.

### b. The Institutional Investors Will Fairly and Adequately Protect the Interests of the Class

The adequacy of representation requirement of Rule 23(a)(4) is satisfied "if there are no conflicts between the representative and class interest and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation." *Id.* (citation omitted).

The Institutional Investors will fairly and adequately represent the interests of the proposed Class. The interests of the Institutional Investors are not antagonistic to those of the class and are clearly aligned with its members. As detailed above, The Institutional Investors' claims involve substantially similar questions of law and fact as the claims of members of the proposed class, and their claims are typical of the claims of members of the class.

In addition, the Institutional Investors has selected counsel that are highly experienced in vigorously and efficiently prosecuting securities class actions such as this to serve as Lead and Liaison Counsel. *See* Gordon Decl. Ex. D (Resume of Motley Rice), Ex. E (Resume of Gordon Law Offices). The Institutional Investors suffered substantial losses due to Defendants' alleged fraud and, therefore, have a sufficient interest in the outcome of this case to ensure vigorous

Memorandum of Law in Support of Motion of
the Institutional Investors for Consolidation,
Appointment as Lead Plaintiff, and Approval
of Selection of Counsel

11

prosecution of the Action. Accordingly, the Institutional Investors satisfy the adequacy requirement.

### 4. The Institutional Investors Are Precisely the Type of Lead Plaintiff Envisioned by the PSLRA

In addition to satisfying the requirements of Rule 23, the Institutional Investors, as large, sophisticated, institutional investors, are exactly the type of investors Congress sought to encourage to assume a more prominent role in securities litigation with the enactment of the PSLRA's lead plaintiff provisions. *See In re SiRF Tech. Holdings, Inc. Sec. Litig.*, No. C 08–0856 MMC, 2008 WL 2220601, at *3 (N.D. Cal.) (N.D. Cal. May 27, 2008) (noting that "by enacting the PSLRA, Congress sought to increase the participation of institutional investors in securities class actions"). Congress noted in the PSLRA Statement of Managers Report that the PSLRA was formulated "to increase the likelihood that institutional investors will serve as lead plaintiff[]," in part, because "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." *In re Cendant Corp. Litig.*, 264 F.3d 201, 244, 264 (3d Cir. 2001) (quoting S. Rep. No. 104-98, at 10 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 and H.R. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733)).

LRI is a sophisticated institutional investor that is familiar with the provisions governing the appointment of lead plaintiffs in PSLRA actions. LRI, based in Munsbach, Luxembourg, is an investment company that has managed mutual and specialized funds since 1988 with approximately $13 billion of assets under management. *See* Gordon Decl. Ex. F ¶ 3 (Institutional Investors' Joint Declaration). Similarly, Atlanta GERF, headquartered in Atlanta, Georgia, is a sophisticated institutional investor that is familiar with the provisions governing the appointment of lead plaintiffs in PSLRA actions. Atlanta GEPF is pension plan that pays

Memorandum of Law in Support of Motion of
the Institutional Investors for Consolidation,
Appointment as Lead Plaintiff, and Approval
of Selection of Counsel

12

benefits to its active members, retirees, and beneficiaries. Atlanta GEPF manages approximately $989.6 million in assets. *See* Gordon Decl. Ex. F ¶ 2. The Institutional Investors have dedicated staffs of professionals who will ensure effective oversight of counsel and of this litigation. In addition, the Institutional Investors have prior experience serving as fiduciaries and selecting, hiring, and overseeing lawyers in complex litigation. Moreover, the Institutional Investors are a cohesive two-member group and have coordinated their actions and communicated with each other to discuss strategy and procedure for directing this litigation and monitoring counsel. *See* Gordon Decl. Ex. F (Institutional Investors' Joint Declaration); *see also Niederklein*, 2011 WL 759553, at *7-8) (recognizing that cohesiveness of group members was shown in another case when "[t]he declarations detail their backgrounds, investment experience, their willingness and agreement to act as a cohesive group, their intention to regularly consult with each other regarding the conduct of [the] lawsuit, their process for sharing information and decision-making, how decisions will be made between them and how their counsel will be overseen") (quoting *Sabbagh v. Cell Therapeutics, Inc.*, Nos. C10-414MJP, C10-480MJP, C10-559MJP, 2010 WL 3064427, at *6 (W.D. Wash. Aug. 2, 2010)). Thus, as demonstrated herein, the Institutional Investors are the precisely the type of lead plaintiffs contemplated by the PSLRA.

### D. The Court Should Approve Universal's Selection of Lead Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel for the class, subject to the court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Atlas Mining*, 2008 WL 821756, at *7. Courts should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the plaintiff class." H.R. Conf. Rep. No. 104-369 (1995), at *35, reprinted in 1995 U.S.C.C.A.N. at 734; *see also In re Cavanaugh*, 306 F.3d at 734 ("Selecting a lawyer in whom a litigant has confidence is an important client prerogative and we

Memorandum of Law in Support of Motion of
the Institutional Investors for Consolidation,
Appointment as Lead Plaintiff, and Approval
of Selection of Counsel

13

will not lightly infer that Congress meant to take away this prerogative from securities plaintiffs. And, indeed, it did not.  While the appointment of counsel is made subject to the approval of the court, the Reform Act clearly leaves the choice of class counsel in the hands of the lead plaintiff.").

The Institutional Investors have selected Motley Rice, a highly-qualified counsel, to serve as Lead Counsel for the proposed Class.  Motley Rice has substantial experience in the prosecution of shareholder and securities class actions.  As the court in *In re NPS Pharmaceuticals, Inc. Securities Litigation*, No. 2:06-cv-570, 2006 WL 6627948, at *4 (D. Utah Nov. 17, 2006), noted, "[Motley Rice has] expertise and experience in the prosecution of shareholder and securities class actions and, as a result, [is] adequate to represent the interests of the class."  *See also* Gordon Decl. Ex. D (Motley Rice Firm Resume).  The Institutional Investors have selected Gordon Law Offices to serve as Liaison Counsel for the proposed Class. Gordon Law Offices likewise has substantial experience in the prosecution of shareholder and securities class actions.  *See* Gordon Decl. Ex. E.  Thus, the Court can be assured that by granting this motion, the proposed Class will receive the highest caliber of legal representation.

## CONCLUSION

For the foregoing reasons, the Institutional Investors respectfully request that the Court: (1) consolidate the Related Actions; (2) appoint the Institutional Investors as Lead Plaintiff; and (3) approve their selection of Motley Rice as Lead Counsel and Gordon Law Offices as Liaison Counsel.  In the alternative, if the Court is not inclined to appoint both members of the Institutional Investors, they respectfully request that the Court consider appointment of either of them individually.  *See Niederklein*, 2011 WL 759553, at *8.

Memorandum of Law in Support of Motion of
the Institutional Investors for Consolidation,
Appointment as Lead Plaintiff, and Approval
of Selection of Counsel

14

Dated: April 2, 2012

Respectfully submitted,

By:   /s/ Philip Gordon
Philip Gordon ISBN 1996
Bruce S. Bistline ISBN 1988
GORDON LAW OFFICES
623 West Hays Street
Boise, ID  83702
Telephone: (208) 345-7100
Facsimile: (208) 345-0050
E-mail: pgordon@gordonlawoffice.com

[Proposed] Liaison Counsel for Lead Plaintiffs

MOTLEY RICE LLC
James M. Hughes
William S. Norton
David P. Abel
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9440
E-mail: jhughes@motleyrice.com
E-mail: bnorton@motleyrice.com
E-mail: dable@motleyrice.com

MOTLEY RICE LLP
Mark I. Labaton
Vincent I. Parrett
1100 Glendon Avenue, 14th Floor
Los Angeles, CA  90024
Telephone: (310) 500-3488
Facsimile: (310) 824-2870
E-mail: mlabaton@motleyrice.com
E-mail: vparrett@motleyrice.com

[Proposed] Lead Counsel for Lead Plaintiffs

Memorandum of Law in Support of Motion of
the Institutional Investors for Consolidation,
Appointment as Lead Plaintiff, and Approval
of Selection of Counsel

15