**SEINIGER LAW OFFICES, P.A.**
Wm. Breck Seiniger, Jr., ISBN 2387
wbs@seinigerlaw.com
942 Myrtle Street
Boise, Idaho 83702
Tel: (208) 345-1000
Fax: (208) 345-4700

*Liaison Counsel for Jeffrey A. Farkas
and David G. Ray*

**FARUQI & FARUQI, LLP**
Richard W. Gonnello
rgonnello@faruqilaw.com
Francis P. McConville
fmcconville@faruqilaw.com
369 Lexington Avenue, 10th Floor
New York, New York 10017
Tel: (212) 983-9330
Fax: (212) 983-9331

*Attorneys for Movants Jeffrey A. Farkas
and David G. Ray and Proposed Lead
Counsel for the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| BRICKLAYERS OF WESTERN PENNSYLVANIA PENSION PLAN, Individually And On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br> v. <br><br> HECLA MINING COMPANY, PHILLIPS S. BAKER, JR. and JAMES A. SABALA, <br><br> Defendants. | Case No. 2:12-cv-00042-BLW <br><br> **THE RESPONSE OF JEFFREY A. FARKAS AND DAVID G. RAY TO COMPETING LEAD PLAINTIFF MOTIONS** |

*[Captioned Continued on Next Page]*

| | |
|---|---|
| JOSEPH S. VITA 2001 REVOCABLE TRUST and JOSEPH S. VITA IRA, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>                    Plaintiff,<br>    v.<br><br>HECLA MINING COMPANY, PHILLIPS S. BAKER, JR. and JAMES A. SABALA,<br><br>                    Defendants. | Case No. 2:12-cv-00067-BLW |

**PRELIMINARY STATEMENT**

Presently pending before the Court are four competing motions seeking appointment as Lead Plaintiffs in the above-captioned consolidated securities class actions (the "Actions"),[1] which assert claims for violations of federal securities laws against Hecla Mining Company ("Hecla" or the "Company") and certain of its officers.[2]

Under Section 21D of the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4, when multiple movants seek to be appointed lead plaintiff, Congress has established a rebuttable presumption in favor of appointing the movant – the so-called "most adequate plaintiff" – who possesses the "largest financial interest" in the litigation and also satisfies the requirements for class representatives under Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

In order of largest to smallest losses, the four movants/groups[3] that remain are as follows:

---

[1] As per this Court's order on April 17, 2012, the *Bricklayers of Western Pennsylvania Pension Plan v. Hecla Mining Co.*, Docket No. 2:12-cv-00042-BLW action was consolidated with the *Joseph S. Vita 2001 Revocable Trust v. Hecla Mining Co.*, Docket No. 2:12-cv-00067-BLW action. ECF No. 31. All ECF references herein shall refer to the *Bricklayers of Western Pennsylvania Pension Plan v. Hecla Mining Co.*, No. 2:12-cv-00042-BLW docket, unless otherwise noted.

[2] Capitalized terms not otherwise defined herein shall have the same meaning as those found in the Memorandum of Law In Support Of The Hecla Investor Group's Motion For (1) Consolidation; (2) Appointment As Lead Plaintiff; And (3) Approval Of Lead Counsel, ECF No. 12-1.

[3] The Hecla Investor Group, consisting of movants Jeffrey A. Farkas and David G. Ray (ECF No. 12), is referred to herein as "HIG 1." The Hecla Investor Group consisting of movants David W. Quist, Peter M. Quist and the Cambria County Employees' Retirement System, (ECF No. 25), is referred to herein as "HIG 2."

| Movant | Purported Losses |
|---|---|
| **1. HIG 2** | **Total Losses: $1,710,428.58[4]** |
| • David W. Quist | Options Losses: $1,033,961.00 |
| • Peter M. Quist | Options Losses: $351,807.00<br>Stock Losses: $92,270.62 |
| • Cambria County Employees' Retirement | Stock Losses: $232,389.96 |
| **2. Institutional Investors** | **Total Losses: $1,303,554.75 (FIFO)**<br>**Total Losses: $1,195,643.10 (LIFO)[5]** |
| • LRI Invest S.A. | Stock Losses: $1,098,782.78 (FIFO)<br>Stock Losses: $1,098,782.78 (LIFO) |
| • City of Atlanta General Employees' Pension Fund | Stock Losses: $204,771.97 (FIFO)<br>Stock Losses: $96,860.31 (LIFO) |
| **3. HIG 1** | **Total Losses: $696,138.30 (FIFO)**<br>**Total Losses: $376,250.87 (LIFO)[6]** |
| • Jeffrey A. Farkas | Stock Losses: $570,573.20 (FIFO)<br>Stock Losses: $250,685.77 (LIFO) |
| • David G. Ray | Stock Losses: $125,565.10 (FIFO)<br>Stock Losses: $125,565.10 (LIFO) |
| **4. Carpenters Pension Fund of West Virginia** | **Total Losses: $17,143.65[7]** |

After reviewing the movants' respective submissions, HIG 1 recognizes that it does not have the largest financial interest in the Actions. However, in the interest of ensuring that the Class is adequately represented, HIG 1 is compelled to point out that, although HIG 2 claims to have the greatest financial interest in this litigation, two of its members – David Quist and Peter Quist (the "Quists") – suffer from significant impediments under Rule 23 that render them

---

[4]   ECF No. 43-4.

[5]   ECF Nos. 19, at 9; 20-3.

[6]   ECF Nos. 12-1, at 8; 17-3, 17-4.

[7]   ECF No. 24-1, at 6.

2

unsuitable to serve as lead plaintiffs.  Namely, because the majority of the Quists' losses stem from trading Hecla call option contracts, the Quists are atypical and inadequate to represent the class.  Indeed, due to the inherently speculative nature of the Quists' options trading, the Quists have effectively overstated their financial interest in the litigation, which is supposed to compensate investors for losses attributable to defendants' fraud – not provide options investors with insurance for their inherently risky bets.

With the Quists' losses eliminated from the equation, the Institutional Investors possess the largest financial interest in the litigation.  The Institutional Investors do not appear to suffer from any deficiencies under Rule 23, and therefore HIG 1 does not object to their appointment as Lead Plaintiffs.  That being said, if the Court determines for some reason that the Institutional Investors are unsuitable to serve as Lead Plaintiffs, HIG 1 stands ready, willing and able to do so if necessary.

## ARGUMENT

When assessing potential lead plaintiffs, only Rule 23(a)'s typicality and adequacy requirements are relevant.  *See, e.g.*, *City of Marysville Gen. Emples. Ret. Sys. v. Nighthawk Radiology Holdings, Inc.*, No. CV09-659-EJL-CWD, 2010 U.S. Dist. LEXIS 41991, at *11 (D. Idaho Apr. 29, 2010) (citing *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002)).  The test for typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Id.* at *11 (citation omitted).  The adequacy requirement is satisfied "if there are no conflicts between the representative and class interests and the representative's attorneys are qualified, experienced, and generally able to conduct the

litigation." *Niederklein v. PCS Edventures!.com, Inc.*, 2011 U.S. Dist. LEXIS 18247, at *28-29 (D. Idaho Feb. 24, 2011) (citation omitted).

Based on the inclusion of the Quists' options losses, HIG 2 purports to have the largest financial interest in the litigation. Even if HIG 2's purported trading losses are accepted at face value, HIG 2 is nonetheless atypical and inadequate under Rule 23 to serve as class representatives because David Quist and Peter Quist lost $1,033,961.00 and $351,807.00 respectively – approximately 81% HIG 2's claimed financial interest in this litigation – solely as a result of the Quists' investments in Hecla call options. *See* ECF No. 43-4.

Generally, options contracts are highly speculative derivative instruments that are often used "to reduce or hedge the risk of [investors'] investment portfolio."[8] Ex. B, Jeffrey J. Haas, *Corporate Finance; in a nut shell*, at 208-09 (2011) [hereinafter Haas, *Corporate Finance*]. Unlike common stockholders who own shares of stock in a corporation and have the right to vote on company matters and receive dividends, purchasers of call options buy contracts from third parties that "give[] [them] the right to buy a specified number of shares of the underlying stock at a price set in the contract at a time on or before the expiration date of the contract." *Weikel v. Tower Semiconductor Ltd.*, 183 F.R.D. 377, 382 n. 2 (D.N.J. Oct. 20, 1998) (citation omitted). "A premium is paid for the option; [and] the contract is worth more or less than the premium depending upon the direction of the market price of the underlying stock relative to the purchase price set in the contract." *Id.*

---

[8] It bears noting that investors by the name of David Quist and Peter Quist submitted similar letters to the Commodities Futures Trading Commission ("CFTC") addressing what the "speculative position limit in COMEX silver futures" should be. Ex. A, Letters to CFTC from David Quist and Peter Quist. All exhibits referenced herein are attached to the Declaration of Wm. Breck Seiniger, Jr., filed on May 14, 2012. Given that Hecla is the largest silver producer in the United States, the Quist's options trades may in fact be a hedge against silver futures positions.

"Any option, including a call option, may have two components: *intrinsic value* and **time value**." Haas, *Corporate Finance*, at 212 (emphasis added). Intrinsic value depends on the "relationship between the current market or spot price of the underlying asset and the option's strike or exercise price." *Id.* However, **time value** relates to the time remaining until the option period expires. The "longer the period of time that a given call option has before expiration, the greater its time value. An option's time value, however, gradually declines to **zero** over its term." *Id.* at 213 (emphasis added).

Thus, due to the significant time value component of an option contract's price, option contracts are inherently speculative. As a result, courts have frequently found options investors unsuitable to serve as class representatives. *See, e.g.*, *Andrada*, 2005 U.S. Dist. LEXIS 6777, at *14-16 (finding options investor atypical and inadequate to serve as lead plaintiff because "factual issues specific to [movant] in determining the precise value of the options – e.g., the maturity, the volatility, of the price of the [defendant's] stock, the level of the short term interest rates, the competitive structure of the market in which the options are traded – would likely threaten to become the focus of the litigation."); *Weikel*, 183 F.R.D. at 391 (concluding that unique factors affect the price of call options, including, but not limited to, "[t]he maturity of an option, the volatility of the price of the underlying stock, the level of short term interest rates, and the competitive structure of the market in which the options are traded. . . .").

HIG 2 is therefore atypical and inadequate to represent the class because the Quists' "options trading and the information [they] used to make investment decisions could become the focus of the litigation, distracting from the central issue: did [the defendants] commit a fraud on the market?" *Applestein v. Medivation, Inc.*, No. C 10-00998 MHP, 2010 U.S. Dist. LEXIS 98255, at *10-12 (N.D. Cal. Sept. 20, 2010) (concluding that options investor was atypical and

5

inadequate to serve as lead plaintiff); *Andrada v. Atherogenics, Inc.*, No. 05 Civ. 00061 (RJH), 2005 U.S. Dist. LEXIS 6777, at *14-16 (S.D.N.Y. Apr. 19, 2005) (same) (citation omitted); *see also Weikel*, 183 F.R.D. at 391 (finding options investors atypical and inadequate because "factual distinctions between . . . Ordinary Share purchasers, combined with the possibility of unique defenses being raised . . . are likely to threaten to become the focus of the litigation").

Moreover, the Quists apparently never sold their call options contracts and let them expire worthless. HIG 2 simply assumes that the Quists' trading losses (*i.e.*, the premiums paid for the right to exercise the call options) represent the Quists' damages recoverable from the defendants. *See* ECF No. 43-4. However, Hecla call options with a strike price of $10.00 and which were set to expire in January 2012[9] were trading for ***$0.01*** per contract during January 2012 as the options period was about to expire. Ex. C; *see Bank of Stockton v. Verizon Commc'ns, Inc.*, 375 Fed. App'x 746, 747 n.1 (9th Cir. 2010) (court taking judicial notice of publically reported stock prices). Consequently, nearly all of the Quists' trading losses are attributable to the speculative nature of options trading and not the defendants' fraud.

As explained by the Supreme Court in *Dura Pharm., Inc. v. Bruodo*, 544 U.S. 336 (2005), plaintiffs must plead proof of a causal connection between a plaintiff's trading loss and the alleged fraud in order for the loss to be recoverable as damages. *Dura*, 544 U.S. at 347 ("But it is should not prove burdensome for a plaintiff who has suffered an economic loss to provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind."). Both of the Actions allege that the Company's fraud was revealed to the market on January 11, 2012. *See* ECF No. 1, at ¶ 39; *see also Joseph S. Vita 2001 Revocable Trust v.*

---

[9] The majority of losses of David and Peter Quest are for call options expiring in January 2012. ECF No. 43-4.

*Hecla Mining Co.*, Docket No. 2:12-cv-00067-BLW, ECF No. 1, at ¶ 37.  While the disclosure of the fraud on January 11, 2012 had a precipitous effect on Hecla's stock price,[10] the effect on the price of the Quists' call options contracts was *de minimis* ($0.01 per contract) because the time value of these options was already near zero at the time.  *See* Ex. C (list of Hecla call options prices noting trades at $0.01 per contract during December 2011 and January 2012). Accordingly, the Quists' financial interest in the litigation is ***grossly overstated*** when viewed solely in terms of their trading losses.

## CONCLUSION

HIG 2 is not a proper group to serve as lead plaintiffs because the Quists are atypical and inadequate to represent to the class in light of the nature of their investments.  The Institutional Investors, however, do not suffer from similar infirmities and appear to satisfy all of the requirements of the PSLRA and Rule 23.  Should the Court deny the Institutional Investor's motion for any reason, however, HIG 1 stands ready to serve as Lead Plaintiff.

---

[10]   ECF No. 1, at ¶ 8 (noting that as a result of the defendant's fraud, "Hecla stock dropped $1.23 per share, to close at $4.61 per share on January 11, 2012"); *Joseph S. Vita 2001 Revocable Trust v. Hecla Mining Co.*, Docket No. 2:12-cv-00067-BLW, ECF No. 1, at ¶ 4 (same).

7

Dated: May 14, 2012

        Respectfully submitted,

        By: */s/ Wm. Breck Seiniger, Jr.*

        **SEINIGER LAW OFFICES, P.A.**
        Wm. Breck Seiniger, Jr., ISBN 2387
        wbs@seinigerlaw.com
        942 Myrtle Street
        Boise, Idaho 83702
        Tel: (208) 345-1000
        Fax: (208) 345-4700

        *Liaison Counsel for Jeffrey A. Farkas and David G. Ray*

        **FARUQI & FARUQI, LLP**
        Richard W. Gonnello
        rgonnello@faruqilaw.com
        Francis P. McConville
        fmcconville@faruqilaw.com
        369 Lexington Avenue, 10th Floor
        New York, New York 10017
        Tel: (212) 983-9330
        Fax: (212) 983-9331

        *Attorneys for Movants Jeffrey A. Farkas and David G. Ray and Proposed Lead Counsel for the Class*