UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRICKLAYERS OF WESTERN PENNSYLVANIA PENSION PLAN,<br><br>                    Plaintiff,<br>    v.<br><br>HECLA MINING COMPANY, *et. al.*,<br><br>                    Defendants. | Case No. 2:12-cv-00042-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Defendants' Motion to Dismiss (Dkt. 92). The Court heard oral argument on the motion on April 19, 2013, and now issues the following decision.

## BACKGROUND

Hecla Mining Company operates the Lucky Friday Mine in Mullan, Idaho. Plaintiffs allege that over a nine-month period from April 2011 to January 2012, a series of incidents revealed deplorable safety conditions at the mine. Plaintiffs assert many general safety violations, but focus mainly on three incidents, plus a special emphasis inspection of the Silver Shaft portion of the mine by the Mine Safety and Health Administration (MSHA).

The first incident occurred on April 15, 2011, when a miner was killed when a rock fall struck him while watering down a muck pile in a stope. *Amended Complaint*, ¶ 49, Dkt. 85. The next incident occurred on November 17, 2011, when a contract miner

was injured while trying to free plugged material in a bin excavation. *Id.*, at ¶ 79. The miner and a co-worker entered the bin from the top to remove blockage below them. *Id.* Material gave way, engulfing them. *Id.* The miner was freed from the material and hospitalized, but he died two days later from his injuries. The co-worker survived. *Id.* The third incident occurred on December 14, 2011, when seven employees were injured in a rock burst. *Id.* at ¶¶ 71-77.

On all of these occasions, Hecla notified MSHA and informed its investors of the events. After the final incident, MSHA conducted a "special emphasis" inspection of the Silver Shaft of the mine. *Id.* at ¶ 105. During the inspection, MSHA issued a citation to Hecla regarding a build-up of cement-like material on the walls and beams of the Silver Shaft. MSHA then issued an order closing the Silver Shaft on January 5, 2012, but Hecla attempted to negotiate with them about ways to avert a long-term closure. *Id.* at 116. However, on January 11, 2012, Hecla announced that the Lucky Friday Mine would be closed for approximately a year to repair the Silver Shaft. *Id.* at 119. In turn, Hecla's stock price dropped about 21%.

Notably, although the Amended Complaint contains allegations of several other MSHA violations, there are no other allegations about any previous MSHA citations for build-up of the cement-like material in the Silver Shaft. Moreover, Plaintiffs do not allege any injury resulted from the build-up of that material, and they do not allege that MSHA claimed any connection between the build-up of material in the Silver Shaft and any of the other incidents.

# LEGAL STANDARD

1. **Legal Standard**

Typically, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*. at 557.

The Supreme Court identified two "working principles" that underlie *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the court need not accept as true, legal conclusions that are couched as factual allegations. *Id*. Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-

79. Second, to survive a motion to dismiss, a complaint must state a plausible claim for relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Generally, a dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009) (issued 2 months after *Iqbal*). The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.,* 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007)(citations omitted).

However, claims for securities fraud must also meet the "stringent pleading requirements" of Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). Therefore, "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. . . ." Fed.R.Civ.P. 9(b); *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir.2003). Under Rule 9(b), "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess*, 317 F.3d at 1106. Additionally, the PSLRA requires a complaint to "plead with

particularity both falsity and scienter." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir.2009) (internal quotation marks omitted). "Thus, to properly allege falsity, a securities fraud complaint must now 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, state with particularity all facts on which that belief is formed.'" *Id*. at 990–91 (ellipsis points omitted) (quoting 15 U.S.C. § 78u–4(b)(1)). "To adequately plead scienter, the complaint must now 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind,'" or scienter. *Id*. at 991 (emphasis added) (quoting 15 U.S.C. § 78u–4(b)(2)).

The required state of mind is either that the defendant acted intentionally or with "deliberate recklessness." *In re Daou Sys. Inc., Sec. Litig.*, 411 F.3d 1006, 1014-15 (9th Cir. 2005). In a securities claim under § 10(b), "recklessness only satisfies scienter" when it "reflects some degree of intentional or conscious misconduct." *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 977 (9th Cir.1999). To adequately plead deliberate recklessness, a plaintiff must allege "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 976 (9th Cir.1999).

To survive a motion to dismiss, the inference of scienter must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). In determining the cogency of the allegations, federal courts are required to consider whether "all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id*. at 323. In other words, courts may not rely "exclusively on a segmented analysis of scienter." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir.2009). Instead, courts must "consider the totality of the circumstances," *Id*. at 992 (citing *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir.2008)). Thus, Ninth Circuit law demands that a federal district court "conduct a dual inquiry." *Id*. First a court must "determine whether any of the plaintiff's allegations, standing alone, are sufficient to create a strong inference of scienter; second, if no individual allegations are sufficient," the court must "conduct a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *Id*.

## ANALYSIS

**1.      Section 10(b) Claim**

"In a typical § 10(b) private action a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon

the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. 148, 156 (2008) (citation mitted). In this case, Plaintiffs' claim fails because, applying the standard outlined above, they have not sufficiently alleged scienter.

### A.    Scienter

Plaintiffs have identified no particularized factual allegations sufficient to suggest a strong inference of scienter regarding alleged misstatements about the Silver Shaft, which is the only real allegation in the Amended Complaint that could plausibly support a securities fraud claim. Plaintiffs suggest four ways in which they have adequately alleged scienter: (1) that the core operations doctrine provides a basis for inferring scienter; (2) that Defendants' motive and opportunity allegations support scienter; (3) that Dodd-Frank disclosures support scienter; and (4) that Hecla's fifteen million dollar evaluation of the mine revealed unsafe conditions.  All fall far short of meeting the pleading standard outlined above.

#### (1)    Core Operations

The core operations inference is a scienter theory which suggests that facts critical to a business's core operations or an important transaction must, of necessity, have been known to a company's key officers. However, the core operations inference rarely succeeds when it is the sole basis for scienter in a complaint. *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008). "Where a complaint relies on allegations that management had an important role in the company but does not contain additional

detailed allegations about the defendants' actual exposure to information, it will usually fall short of the PSLRA standard." *Id.* Generally, management's basic awareness of the day-to-day activities of the company's business does not establish scienter in the absence of some additional allegation of specific information conveyed to corporate management and related to the fraud or other allegations supporting scienter." *Id.* at 784-85 (Internal quotation and citation omitted). Still, "such allegations may independently satisfy the PSLRA where they are particular and suggest that defendants had actual access to the disputed information. . . ." *Id.* at 786. But they will only satisfy the PSLRA standard "in a more bare form, without accompanying particularized allegations, in rare circumstances where the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *Id.* More often, the core operations inference is used along with other allegations to raise an inference of scienter. *Id.* At 785.

Here, Plaintiffs suggest the core operations inference applies to satisfy scienter on its own, or alternatively as part of their other allegations. They are wrong on both counts.

To satisfy an allegation that the defendants had actual access to the disputed information, plaintiffs must typically allege "specific admissions from top executives that they are involved in every detail of the company and that they monitored portions of the company's database, a specific admission from a top executive that [they knew] exactly how much [they] have sold in the last hour around the world, or other particular details

about the defendants' access to information within the company." *Zucco Partners,* 552 F.3d at 1000. (Internal quotations and citations omitted).

In *Zucco*, Plaintiffs did not meet their burden even though they alleged "that senior management [including the CFO] closely reviewed the accounting numbers generated by Digimarc each quarter . . . , and that top executives had several meetings in which they discussed quarterly inventory numbers." *Id.* In this case, Plaintiffs' allegations are not even that specific. They allege that the individual defendants' primary focus and daily management responsibilities centered around the Lucky Friday Mine. In their brief, they suggest that paragraphs 3, 43 and 44 support these allegations, but these three paragraphs do nothing more than detail the Lucky Friday Mine's revenues. Dkt. 85, ¶¶ 3, 43, and 44.

Moreover, although in their brief Plaintiffs generally cite hundreds of additional paragraphs from their Amended Complaint (¶¶ 138-250, 284-300) in support of their core operations argument, a close review of those paragraphs reveals nothing about corporate executives having knowledge of key information leading to the shut down of the mine. Plaintiffs make only very generic assertions that the individual defendants' pronouncements on the subjects at issue provide circumstantial evidence that they were receiving specific information about them. But a thorough review of all these paragraphs reveals no specific pronouncements on the subjects at issue. None of the statements in the Amended Complaint attributed to the individual defendants discuss the build-up in the Silver Shaft or any of the other safety issues for which the mine later received MSHA citations. Simply put, the Amended Complaint does not contain any detailed allegations

about Defendants' actual exposure to information. *South Ferry*, 542 F.3d at 784. Instead, it only suggests corporate management's general awareness of the day-to-day goings on of the company's business. This is not enough to satisfy Plaintiffs' burden.

Additionally, Plaintiffs have not made sufficient allegations that the nature of the relevant fact or facts is of such prominence that it would be absurd to suggest that management was without knowledge of the matter. *Zucco Partners*, 552 F.3d at 1000. There is no allegation that Defendants failed to disclose the MSHA order shutting down the Silver Shaft to investors or the public. Such an allegation would suffice because it would be absurd for Hecla's corporate executives to suggest they did not know about the order when shutting down the Silver Shaft would result in such a huge loss of revenue to the company. But there is no allegation to that effect in the Amended Complaint. The Amended Complaint contains no allegations of undisclosed facts which so affected Hecla's revenues, moving this case into the "rare circumstance[] where the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *Id.* at 786. The order shutting down the mine was promptly disclosed, and there is no allegation to the contrary.

Finally, Plaintiffs' allegations that MSHA issued many citations to the Lucky Friday Mine make no difference here. There is no specific allegation that those citations were either related to the Silver Shaft, or otherwise affected silver production or revenue to such an extent that Hecla's executives must have known about them. Accordingly, the core operations inference does not apply in this case.

### (2) Motive and Opportunity Allegations

Plaintiffs next argue that the individual defendants were motivated to conceal the extent of adverse safety compliance in an effort to make the company more attractive to investors as the lowest-cost silver producer. Plaintiffs suggest this was the response to Hecla's huge potential legal liability for environmental non-compliance. Plaintiffs contend that although motive and opportunity may not suggest scienter on their own, they serve as part of the required holistic inquiry.

The Amended Complaint certainly cites instances where Hecla's corporate executives indicate that Hecla made money because it is a low-cost producer of silver. But the Amended Complaint provides no specific allegation that Defendants were motivated to keep costs down to deflect attention from environmental liabilities. Generally stating that the company deliberately eschewed compliance with safety regulations in order to maintain low-cost production of silver does not meet the standard for asserting scienter. Dkt. 85, ¶¶ 6, 27, 29, and 189. These bare allegations do not satisfy scienter on their own, and as explained below, they do nothing to support scienter under the holistic approach.

### (3) Dodd-Frank Disclosures

Plaintiffs next explain that Hecla was required to identify the number of violations, orders, and citations against it in its 10-Q and 10-K forms pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act. Therefore, Plaintiffs allege, Defendants cannot deny that they had knowledge of the violations during the class

period. Plaintiffs somehow suggest that because Defendants knew about these disclosures, they were also aware of other undisclosed issues leading to the shutdown of the mine. But Plaintiffs allege no facts making this connection; they simply say it. This is not enough to comply with the pleading standard for scienter, and these allegations are a non-starter.

### (4) Evaluation

Plaintiffs next allege that Defendants undertook an exhaustive $15 million evaluation of the Lucky Friday Mine in connection with an expansion project. Plaintiffs argue that it is absurd to suggest the evaluation did not reveal the poor safety operations and deferred maintenance issues which eventually forced the extended closure of the mine. In their brief, Plaintiffs cite paragraphs 286-296 as support for these assertions.

Within these paragraphs, Plaintiffs contend that Defendants considered cost instead of safety when they made the decision regarding the expansion of the Lucky Friday Mine. A review of the Amended Complaint, particularly the paragraphs cited by Plaintiffs, does reveal allegations that Defendants considered cost when evaluating expansion. However, there are no specific allegations that Defendants did so in lieu of safety, and there are no specific allegations of how they did so. Plaintiffs again suggest a connection that is not there.

Moreover, the specific allegations in the Amended Complaint, and the quotes from individual Defendant Baker and the company's reports, do not suggest that Defendants spent $15 million on an "evaluation" of the Lucky Friday Mine. Instead, individual

Defendant Baker stated, as quoted in the Amended Complaint, that the company "spent about $15 million on a project that we expect to cost between $150 million and $200 million and take about five years to complete." *Amended Complaint*, ¶ 289, Dkt. 85. There are no allegations that this project included an inspection of the Silver Shaft which would "had to have" notified Hecla corporate executives of the build-up in the Silver Shaft. Plaintiffs' conclusory argument that Defendants undertook an exhaustive $15 million evaluation of the mine which revealed poor safety operations is not only unsupported by the allegations in the Amended Complaint, but is contradicted by them.

### (5) Holistic Approach

Finally, as explained above, Ninth Circuit law requires a district court to "conduct a dual inquiry." *Zucco Partners,* 552 F.3d at 992. First, as the Court has done above, the Court must "determine whether any of the plaintiff's allegations, standing alone, are sufficient to create a strong inference of scienter. . . ." *Id*. They do not.

"[S]econd, if no individual allegations are sufficient," the court must "conduct a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *Id*. "When conducting this holistic review, . . . [the Court] must also take into account plausible opposing inferences that could weigh against a finding of scienter." *Id.* at 1006 (Internal quotation and citation omitted). Thus, "[e]ven if a set of allegations may create an inference of scienter greater than the sum of its parts, it must still be at least as

compelling as an alternative innocent explanation." *Id.* Here, Plaintiffs allegations fail under this holistic review.

In *Zucco*, the plaintiff accused Digimarc Corporation of purposefully manipulating its financial prospects by capitalizing software development expenditures which should have been expensed. The Ninth Circuit found that although the allegations in that case were "legion," they were not as cogent or compelling as a plausible alternative inference even when considered under a holistic approach. *Id.* at 1007. Instead, the court made the rather simple statement that "although Digimarc was experiencing problems controlling and updating its accounting and inventory tracking practices, there was no specific intent to fabricate the accounting misstatements at issue. . . ." *Id.* The Ninth Circuit explained that "[i]t is more plausible that Digimarc's management was unable to control the accounting processes within the corporation during . . . integration [of a large new division into its existing business] than that it was systematically using accounting manipulations to make the company seem slightly more financially successful." *Id.* Accordingly, the Ninth Circuit concluded that the district court did not err when it dismissed the plaintiff's complaint for failure to sufficiently allege scienter. *Id.*

Here, Plaintiffs' claims are not even as extensive or "legion" as those in *Zucco*. More importantly though, as with the allegations in *Zucco*, the allegations in this case are not as compelling as an alternative innocent explanation even when considered under a holistic approach. The real crux of Plaintiffs' scienter allegation is that Defendants intentionally misled investors into believing that the Silver Shaft, and the Lucky Friday

Mine in general, had no significant MSHA compliance issues which could lead to shutting down the mine. But the specific allegations in the Amended Complaint do not support such an assertion.

For one thing, the MSHA reports incorporated by reference in the Amended Complaint indicate that Hecla did disclose the mine's MSHA compliance issues to investors. Second, there is no evidence and no allegation that any of these MSHA violations gave Defendants notice that there was some problem which would ultimately cause MSHA to shut down the mine. MSHA conducted quarterly inspections itself, and issued some violations, but there is no allegation that MSHA gave any indication during these inspections that the mine would need to be shut down until MSHA actually ordered the Silver Shaft be repaired. Plaintiffs' assertion that Defendants traded safety for cost is simply not supported by the factual allegations in the Amended Complaint. Even under the holistic approach, the more compelling explanation is that Defendants first learned of the MSHA violation which resulted in closure of the mine when MSHA notified them in late December 2011. At that point, Defendants did not withhold that information from its investors; instead, it promptly notified them. Accordingly, there are no allegations supporting scienter in this case, and the section 10(b) claim must be dismissed.

**2.     Section 20(a) Claim**

Count II of the Amended Complaint asserts a claim for "controlling person" liability against the individual defendants in this case. To succeed on this claim, Plaintiffs must sufficiently plead a violation of § 10(b). *Zucco Partners*, 552 F.3d at 990. As explained above, they have not done so. Accordingly, Count II will also be dismissed.

### 3. Leave to Amend

As explained above, a dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009). Thus, more often than not most district courts give a plaintiff leave to amend when claims are dismissed pursuant to Rule 12(b)(6) despite the stringent standards of the PLSRA.

In this case, Plaintiffs have already amended the complaint once, but that was not in response to a motion to dismiss; it was in response to consolidation of this matter. Thus, the Court believes Plaintiffs should be given an opportunity to amend their Amended Complaint even though the Court does have serious doubts about their ability to cure the defects. A thorough review of the 125-page Amended Complaint reveals an attempt by Plaintiffs to tie unrelated and irrelevant safety violations to the build-up of the Silver Shaft which caused a shut down of the mine. More of the same in another complaint will not be enough. Simply compiling a large quantity of otherwise questionable allegations does not create a strong inference of scienter. *Zucco,* 552 F.3d at 1008. By giving Plaintiffs the opportunity to amend their Amended Complaint, the Court

cautions Plaintiffs that their third complaint must meet the pleading standards of the PLSRA or it will be dismissed with prejudice.

Finally, as happens in nearly every case where a plaintiff is given an opportunity to amend the complaint, the Court assumes Defendants in this case will file a motion to dismiss the new complaint. Although the Court did not address the other elements of Plaintiffs' claims in detail in this memorandum decision, the parties should understand that the Court is only concerned about the scienter element. Accordingly, unless Plaintiffs make significant changes to the complaint regarding the other elements, only scienter should be addressed in any forthcoming motion to dismiss, and the Court does not expect the parties to file another set of overlength briefs.

## ORDER

**IT IS ORDERED THAT:**

1. Defendants' Motion to Dismiss (Dkt. 92) is **GRANTED with leave to amend**. Plaintiffs may file an amended complaint on or before **October 18, 2013**.



DATED: September 26, 2013

_____
B. Lynn Winmill
Chief Judge
United States District Court

MEMORANDUM DECISION AND ORDER - 17